# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| BRENDA PELTON, | ) | CASE NO. 3:20cv0441 |
| | ) | |
| Plaintiff, | ) | JUDGE JACK ZOUHARY |
| | ) | |
| v. | ) | MAGISTRATE JUDGE DAVID A. RUIZ |
| | ) | |
| ANDREW SAUL, | ) | |
| *Comm'r of Soc. Sec.*, | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| Defendant. | ) | |

Plaintiff, Brenda Pelton (Plaintiff), challenges the final decision of Defendant Andrew Saul, Commissioner of Social Security (Commissioner), denying her applications for a Period of Disability and Disability Insurance Benefits under Title II of the Social Security Act, 42 U.S.C. §§ 416(i), 423 et seq. (Act). This court has jurisdiction pursuant to 42 U.S.C. § 405(g), and the case is before the undersigned United States Magistrate Judge pursuant to an automatic referral under Local Rule 72.2(b) for a Report and Recommendation. For the reasons set forth below, the Magistrate Judge recommends that the Commissioner's final decision be AFFIRMED.

## I. Procedural History

Plaintiff applied for disability benefits on November 28, 2017, alleging a disability onset date of September 17, 2017. (R. 8, Transcript (Tr.) 129, 213-214). The application was denied initially and upon reconsideration, and Plaintiff requested a hearing before an Administrative Law Judge (ALJ). (Tr. 142-44, 163-69, 170-71). Plaintiff participated in the hearing on March 7, 2019, was represented by counsel, and testified. (Tr. 52-119). A vocational expert (VE) also participated and testified. *Id*. On May 17, 2019, the ALJ found Plaintiff not disabled. (Tr. 52-67). The Appeals

Council denied Plaintiff's request to review the ALJ's decision, on January 24, 2020, and the ALJ's decision became the Commissioner's final decision. (Tr. 1-7).

Plaintiff's complaint challenges the Commissioner's final decision. (R. 1). The parties have completed briefing in this case. (R. 11, 13). Plaintiff asserts the ALJ erred when: 1) assessing Plaintiff a residual functional capacity that did not incorporate a need to elevate legs, 2) rejecting the opinions of Dr. Scott Kaple, Plaintiff's primary care physician, and 3) assessing Plaintiff's credibility. Plaintiff also contends that new and material evidence supports reversal or remand. (R. 11, PageID# 1968-77).

## II.     Evidence

### A.     Relevant Medical Evidence[1]

#### 1.     Background

Plaintiff was born in 1961, and was 56 on the alleged disability onset date. (Tr. 120). She has a high school education (Tr. 250), and past relevant work as a dispatcher (sedentary), service order dispatcher (sedentary), and customer service instructor (sedentary). (Tr. 111).

#### 2.     Treatment Records

On August 10, 2017, Dr. Zachary Zumbar evaluated Plaintiff for pain management, and Plaintiff reported moderate to severe pain in her knees—worse in the left knee than the right. (Tr. 450). She reported that Mobic and Percocet helped control her pain. (Tr. 450). Dr. Zumbar diagnosed bilateral knee osteoarthritis and prescribed a Medrol Dosepak and Mobic. (Tr. 451). On October 26, 2017, Dr. Zumbar administered cortisone injections to Plaintiff's knees. (Tr. 448).

---

[1] The recitation of the evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and also deemed relevant by the court to the assignments of error raised.

On December 8, 2017, Dr. Margaret Tsai evaluated Plaintiff, following a referral from Dr. Zumbar for a rheumatologic evaluation. (Tr. 773). Dr. Tsai noted that Plaintiff's gait was normal without the use of an assistive device. (Tr. 774). Plaintiff had no joint deformities, no joint motion limitation, a negative straight leg raising test, fully intact strength throughout (5/5), fully intact sensation to fine touch, and normal toe and heel walking. (Tr. 775). The doctor diagnosed rheumatoid arthritis, idiopathic chronic gout, osteoarthritis and chronic pain. *Id*. Dr. Tsai recommended Plaintiff use over the counter arthritis cream, take acetaminophen, and exercise. (Tr. 775-76).

On January 9, 2018, Dr. Vikas Patel, an orthopedic specialist, evaluated Plaintiff for left knee pain. (Tr. 876). Physical examination revealed bilateral VMO (Vastus Medialis Oblique) atrophy and patellofemoral crepitus (Tr. 876). X-rays of Plaintiff's knees showed advanced medial compartment degenerative arthritis. (Tr. 872).

On March 5, 2018, Dr. Hong Shen evaluated Plaintiff for complaints of low back pain that radiated down her right lower extremity, increased with standing and walking, and was relieved by lying down and medications. (Tr. 846-48). On examination, Plaintiff ambulated "with none assistant device" and had an antalgic gait, with "scissor, cerebellum ataxia, steppage, spastic, Trendelenburg, Circumducted gait or Waddling gait." (Tr. 848). Her lower extremities had "No signs of atrophy" and her knees were normal. *Id*. The doctor diagnosed lumbar spondylosis and sacroiliac joint inflammation. (Tr. 849). Dr. Shen recommended that Plaintiff undergo epidural steroid injections in the low back, lose weight, and attend physical therapy. (Tr. 849). On March 14, 2018, Plaintiff underwent epidural steroid injections and medial branch blocks in the lumbar spine at L4-5 and L5-S1. (Tr. 905).

Plaintiff saw Dr. Scott Kaple on March 20, 2018, and complained of back pain. (Tr. 947).

3

Dr. Kaple diagnosed Plaintiff with morbid obesity and prescribed her adipex to assist with weight loss. (Tr. 949).

Plaintiff saw Dr. Shen on May 7, 2018, and reported that the medial branch nerve block on March 14, 2018, provided 90% pain relief continuing to the appointment, but she noted pain with standing and waiting in line (Tr. 1666). Plaintiff informed Dr. Shen that she recently started using a cane. (Tr. 1667). Dr. Shen diagnosed lumbar spondylosis and osteoarthritis of the knees, and noted that Plaintiff was not a surgical candidate due to morbid obesity. (Tr. 1666-67). The doctor prescribed genicular nerve blocks, which Plaintiff underwent on May 9, 2018. (Tr. 1667, 1696). Plaintiff continued on Adipex for weight loss. (Tr. 1698-1701).

On June 15, 2018, Plaintiff saw Dr. Shen and reported that she briefly had 80% reduction in her pain following the nerve blocks, but the pain had returned. (Tr. 1712). Dr. Shen noted Plaintiff used a cane, with pain and reduced range of motion of the left knee. (Tr. 1713). The doctor prescribed radiofrequency ablation of the left knee genicular nerve. (Tr. 1713). On July 18, 2018 and August 8, 2018, Plaintiff underwent knee superolateral and inferiolateral genicular nerve radiofrequency ablation under fluoroscopic guidance. (Tr. 1876, 1880).

On September 19, 2018, CNP Jessica Hill examined Plaintiff, who noted increased back pain with radiation down her left leg and stated that she had 80% improvement in her knees following the radio frequency ablation. (Tr. 1769, 1771). Ms. Hill diagnosed Plaintiff with lumbar spondylosis without myelopathy, low back pain with right sided sciatica, osteoarthritis and chronic pain of the bilateral knees. (Tr. 1769-1771). Ms. Hill referred Plaintiff to physical therapy. *Id*.

Plaintiff underwent a physical therapy evaluation on October 4, 2018. (Tr. 1732). She

presented with decreased trunk mobility, decreased general core strength, and deconditioning in the low back and right lower extremity. (Tr. 1732). Plaintiff underwent physical therapy from October 4, 2018, through November 21, 2018, and progressed slower than expected. (Tr. 1732-1757).

On November 9, 2018, Plaintiff followed up with Dr. Tsai for rheumatoid arthritis and complaints of pain in her hands and knees. (Tr. 1843). Dr. Tsai noted tenderness to palpation of the bilateral thumbs, right achilles, low back with radiation down the right lower extremity, bilateral hips, knees, as well as the neck and left shoulder. (Tr. 1786-1787). The doctor observed that Plaintiff ambulated slowly with a heavy cane, but her gait was normal without an assistive device, heel and toe walking was normal, motor strength was fully intact (5/5), and a straight leg raising test was negative. (Tr. 1846). Diagnostic x-rays of Plaintiff's hands revealed mild degenerative changes in the carpometacarpal joints secondary to a history of osteoarthritis. (Tr. 1869). X-rays of Plaintiff's knees showed severe medial compartment degenerative changes bilaterally. (Tr. 1869). Dr. Tsai diagnosed rheumatoid arthritis of multiple sites, chronic thumb pain, and chronic knee pain. (Tr. 1846).

On November 21, 2018, Plaintiff reported to her physical therapist that she slipped and fell while cleaning her floors, landed on her back, and was so sore that she could not do any therapy. (Tr. 1757). She also reported that her sciatica was worse. (Tr. 1757).

Dr. Kaple diagnosed Plaintiff with type 2 diabetes mellitus and morbid obesity, on January 15, 2019, and prescribed a cane. (Tr. 1887-1891).

On January 22, 2019, Dr. Shen diagnosed Plaintiff with secondary osteoarthritis of multiple sites, acute right sided low back pain with sciatica and a BMI of 50-59. (Tr. 1903).

5

### 3.    Medical Opinions Concerning Plaintiff's Functional Limitations

On February 1, 2018, Stephen Sutherland, M.D., a state agency physician, reviewed Plaintiff's medical records and found that Plaintiff could perform work at the light exertion level. The doctor assessed that Plaintiff could lift and/or carry 20 pounds occasionally, frequently lift and/or carry 10 pounds, stand and/or walk 4 hours, sit for 6 hours in an 8-hour workday; and occasionally: use her lower extremities for the operation of pedals; climb ramps and stairs, but never climb ladders, ropes, or scaffolds; balance, stoop, kneel, crouch, or crawl. (Tr. 125-26). Dr. Sutherland opined that Plaintiff should avoid concentrated exposure to extreme cold and vibrations and avoid all exposure to workplace hazards such as hazardous machinery and unprotected heights. (Tr. 125-26). State agency physician Steve E. McKee, M.D., reviewed the medical evidence on April 12, 2018, and concurred with Dr. Sutherland's conclusions. (Tr. 136-38).

On April 17, 2018, Dr. Kaple completed a medical source statement. (Tr. 1324). Dr. Kaple opined that Plaintiff could only lift and carry one to two pounds occasionally; never stand or walk; sit for only one hour; never climb, balance, stoop, kneel, crouch, or crawl; occasionally reach; rarely push, pull, or engage in fine or gross manipulation; needed to elevate her legs at will to 90 degrees; and needed to avoid heights, moving machinery, temperature extremes, and pulmonary irritants. (Tr. 1552-53, 1728-29, 1826- 27, 1893-94). Dr. Kaple opined that Plaintiff experienced moderate to severe pain that would interfere with her ability to concentrate, cause absences and time off-task. (Tr. 1552-53, 1728-29, 1826-27, 1893-94). Dr. Kaple further opined that Plaintiff had moderate to extreme limitations in understanding, remembering, applying information, interacting with others, adaptive functions, concentration, persistence, and pace. (Tr. 1554-55, 1556, 1730-31).

Also, on April 17, 2018, Dr. Kaple completed a medical source statement of Plaintiff's

mental health limitations. (Tr. 1323). Dr. Kaple opined that Plaintiff had a marked limitation in eight different areas and two extreme limitations including in the ability to work a full day without needing more than the allotted number or length of rest periods during the day. (Tr. 1326).

On October 8, 2018, Dr. Kaple completed a second assessment of Plaintiff's physical abilities and found her limited to no lifting or carrying, two minutes standing and walking, ten minutes sitting, and assessed she could rarely perform postural or manipulative activities. (Tr. 1728-1729). Dr. Kaple further opined that Plaintiff would need a sit, stand or walk at will option, would need to elevate her legs between 90-120 degrees, would need to spend most of the day resting; and the doctor noted she experiences pain that would interfere with her ability to concentrate, taking her off task and causing absenteeism. (Tr. 1729). Dr. Kaple also completed a mental medical source statement indicating Plaintiff had a marked or extreme limitation in all areas of mental functioning. (Tr. 1730-1731).

Dr. Kaple completed a third assessment of Plaintiff's physical abilities on January 15, 2019, and opined that Plaintiff could: lift and carry one pound occasionally, not stand or walk, sit for less than 1 hour, and rarely perform postural or manipulative activities. (Tr. 1826-1827). The doctor also stated that Plaintiff would need: a sit, stand or walk at will option; to elevate her legs between 90-120 degrees; to spend 6-8 hours of the workday resting; and he assessed that pain would interfere with her ability to concentrate, taking her off task and causing absenteeism. (Tr.1827).

### 4.    Subsequent Medical Evidence

After the administrative hearing and the ALJ's May 17, 2019 decision finding Plaintiff not disabled, Plaintiff submitted additional evidence to the Appeals Council in support of her claims.

(Tr. 8-22, 24-26).

Plaintiff saw Dr. Shen on July 2, 2019, and reported worsening knee symptoms since January 2019. (Tr. 32). The doctor observed Plaintiff walking with a cane, found tenderness on palpation of the bilateral medial aspect of her knee, and administered a steroid injection in her right knee. (Tr. 34). On July 9, 2019, Plaintiff reported some improvement in her right knee following the injection and received an injection in her left knee. (Tr. 39, 41).

On November 22, 2019, Dr. Sherif Zaky evaluated Plaintiff on referral from Dr. Kaple. (Tr 10). Dr. Zaky treated Plaintiff in November and December 2019 for complaints of lumbar pain, bilateral wrist pain, and bilateral knee pain. Physical examinations revealed an antalgic gait, knee crepitus with extension and flexion, medial knee tenderness, positive Faber test, positive straight leg test, positive gaenslen test, tenderness to palpation of the lumbar spine, SI tenderness, painful lumbar range of motion and positive facet loading. (Tr. 11, 14-15). The doctor diagnosed Plaintiff with lumbar degenerative disc disease, chronic pain, sacroillitis, lumbosacral spondylosis, bilateral wrist pain, and bilateral knee arthritis. (Tr. 11). Plaintiff's X-rays, on December 5, 2019, revealed marked L4-5, L5-S1 disc space narrowing advanced lower lumbar facet degeneration, moderate 1st carpometacarpal degenerative changes of the right hand, and mild to moderate degenerative changes of the left hand. (Tr. 17, 19, 20). Dr. Zaky administered a left knee steroid injections in November and December 2019, and saroilliac injections on January 9, 2020. (Tr. 12, 21).

**B.    Relevant Hearing Testimony**

During the March 7, 2019 hearing, Plaintiff testified as follows:

- She has a high school diploma and an associate degree. (Tr. 79). She stopped

8

working in March 2016, after she fell and experienced sciatica symptoms down her right leg and back. (Tr. 80). Her last job was at Citizens Telecommunication Services in dispatch; a sedentary job with no lift requirements. (Tr. 81, 84).

- She receives care at the Cleveland Clinic, but has lacked health insurance since 2017. (Tr. 87-88). Plaintiff indicated her current weight was 356 pounds, which exacerbated her pain symptoms and prevented her from doing activities. (Tr. 89-90). She was advised to lose weight before knee replacement surgery. (Tr. 91). She has tried walking, physical therapy and weight loss aid Adipex. (Tr. 90). She indicated her rheumatologist wanted to go ahead with knee replacement surgery, but Plaintiff testified that she was not eligible for Medicaid. (Tr. 91, 94).

- Plaintiff has low back pain daily that radiates down her right leg to her foot. (Tr. 92). She was prescribed a cane, and could walk about 15 to 20 feet without it. (Tr. 92-94). She recently was diagnosed with arthritis in her thumbs, which flares up almost every day; and has arthritis throughout her whole body, "osteo, the rheumatoid, gout." (Tr. 94-95). Thumb pain prevents her from twisting a bottle cap and has caused her to drop things for at least a year. (Tr. 91-92, 94-95, 102-103). She takes medications, uses lidocaine daily, and does home exercises at while sitting, to help with her pain. (Tr. 95, 99). She can do some dishes so long as she is sitting; her husband prepares most meals, does the laundry and other household chores. (Tr. 96, 106). She spends her day watching TV and listening to the news on her phone. (Tr. 96). She can do quick grocery trips. (Tr. 97). Plaintiff reported falling three times in the last year and having trouble sleeping. (Tr. 99, 104).

- During the past year, she received cortisone injections in her knees three times, which were to last eight months to a year, but she stated the pain returned. (Tr. 101). She received injections in her back that provided relief, but the pain had increased in the past few weeks. (Tr. 103). Plaintiff used ice packs and over the counter medication for pain relief. (Tr. 103). She elevated her legs straight out to relieve knee pain that caused problems sitting. (Tr. 103, 105).

- Regarding her past employment, Plaintiff testified that she could no longer sit at a computer desk, and could not concentrate due to pain and the need to change positions from sitting, standing and walking. (Tr. 105, 107). She stated that the combination of the medication and pain makes her feel like she is not the same person. (Tr. 108).

During the administrative hearing, the VE listed Plaintiff's past relevant work as a dispatcher (sedentary exertion, SVP 4), service order dispatcher (sedentary exertion, SVP 4),

customer service instructor (sedentary exertion, SVP 6), and report clerk (sedentary, SVP 4). (Tr.

111). The ALJ posed the following hypothetical question to the VE:

> I want to ask that you consider a hypothetical individual of the claimant's age and education with the past work that has been described. For the first hypothetical, we're going to have a hypothetical individual perform less than a full range of light work, and that this individual can lift/carry, push and pull 20 pounds occasionally, 10 pounds frequently. This individual can sit for six hours out of an eight-hour workday; can stand and/or walk for four hours out of an eight-hour workday. This person must have the ability to alternate between sitting and standing at their option every 25 minutes for 1 to 2 minutes, so long as this individual is not off task or has to leave the vicinity of the workstation. This person can never climb ladders, ropes or scaffolds, kneel or crawl and can occasionally climb ramps and stairs, balance, crouch and stoop. This individual can frequently handle and finger with the bilateral upper extremities. With the bilateral lower extremities, this individual can occasionally push and/or pull or operate foot controls. This individual can occasionally be exposed to extreme cold and heat and vibrations. This individual can occasionally walk on uneven terrain and cannot work around unprotected heights. This individual cannot be exposed to more than moderate noise as defined in the Dictionary of Occupational Titles. This individual cannot perform any commercial driving. Given this hypothetical, can this hypothetical individual perform any of the past work that has been identified?

(Tr. 112). The VE testified that based upon the limitations noted, the individual could not perform

the position of report clerk because it exceeded "the physical demands of the handling and

fingering requirements[,]" but that the other three occupations remained. (Tr. 112).

The ALJ then added further limitations that the "individual must be able to use an assistive

device such as a cane. If this individual has to ambulate more than 15 to 20 feet from the

workstation, would that change your answer at all as it relates to the first hypothetical?" The VE

testified that the limitation would eliminate the customer service instructor position, but such an

individual could still perform the two dispatcher positions. (Tr. 114).

The ALJ added further limitations as follows:

> If we added in and considered the first three hypotheticals and if we added in that this individual…. We added in that this individual could understand, remember and

carry out simple, routine and detailed tasks, make judgments on simple and detailed work, and respond appropriately to usual work situations and changes in a work setting with few and occasional changes, would that change your answer at all for those first three hypotheticals?

(Tr. 114-15). The VE testified that these limitations eliminated all of Plaintiff's past work. The VE further testified that if Plaintiff was off task 10% or more of the workday, required extra unscheduled rest periods during the workday that disrupted work flow, was absent one or more days a month from the workplace, or needed to elevate her legs straight out (a ninety degree angle), there would be no work that she could perform. (Tr. 117).

## III.    Disability Standard

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act. 20 C.F.R. § 404.1505 & 416.905; *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524 (6th Cir. 1981). A claimant is considered disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. §§ 404.1505(a) and 416.905(a); 404.1509 and 416.909(a).

The Commissioner determines whether a claimant is disabled by way of a five-stage process. 20 C.F.R. § 404.1520(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990). First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits. 20 C.F.R. §§ 404.1520(b) and 416.920(b). Second, the claimant must show that she suffers from a medically determinable "severe impairment" or combination of impairments in order to warrant a finding of disability. 20 C.F.R. §§ 404.1520(c)

and 416.920(c). A "severe impairment" is one that "significantly limits ... physical or mental ability to do basic work activities." *Abbott*, 905 F.2d at 923. Third, if the claimant is not performing substantial gainful activity, has a severe impairment (or combination of impairments) that is expected to last for at least twelve months, and the impairment(s) meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience. 20 C.F.R. §§ 404.1520(d) and 416.920(d). Fourth, if the claimant's impairment(s) does not prevent her from doing past relevant work, the claimant is not disabled. 20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f). For the fifth and final step, even if the claimant's impairment(s) does prevent her from doing past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled. 20 C.F.R. §§ 404.1520(g) and 416.920(g), 404.1560(c).

## IV.    Summary of the ALJ's Decision

The ALJ made the following findings of fact and conclusions of law:

1) The claimant meets the insured status requirements of the Social Security Act through December 31, 2022.

2) The claimant has not engaged in substantial gainful activity since September 17, 2017, the alleged onset date (20 CFR 404.1571, *et seq*.).

3) The claimant has the following severe impairments: obesity; rheumatoid arthritis; lumbar degenerative disc disease; right hip degenerative joint disease; bilateral knee osteoarthritis; and bilateral hand osteoarthritis (20 CFR 404.1520(c)).

4) The claimant did not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525, 404.1526).

5) After careful consideration of the entire record, the undersigned finds that through the date last insured, the claimant has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a), except that she can lift, carry, push, and pull 20 pounds occasionally and 10 pounds frequently. She can sit for 6 hours in an eight-hour workday and can stand and/or walk for 2 hours in an eight-hour workday. She must have the ability to alternate between sitting and standing,

at her option, every 25 minutes for 1-2 minutes so long as she is not off task or has to leave the vicinity of the workstation. The claimant must be able to use an assistive device/cane if she has to ambulate 15 to 20 feet from the workstation. The claimant can never climb ladders, ropes or scaffolds, kneel, or crawl and can occasionally climb ramps and stairs, balance, crouch, and stoop. She can frequently handle and finger with the bilateral upper extremities. With the bilateral lower extremities, she can occasionally push and/or pull or operate foot controls. She can occasionally walk on uneven terrain and cannot work around unprotected heights. She cannot be exposed to more than moderate noise as defined in the Dictionary of Occupational Titles (DOT). She cannot perform any commercial driving.

6) The claimant is capable of performing past relevant work as a Service Order Dispatcher (DOT Code 221.370-070) and Dispatcher (DOT Code 959.167-010) as generally performed. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7) The claimant has not been under a disability, as defined in the Social Security Act, from September 17, 2017, through the date of the decision (20 CFR 404.1520(f)).

(Tr. 57-67 ).

## V.      Law and Analysis

### A.  Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether it is supported by substantial evidence and was made pursuant to proper legal standards. *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010). Review must be based on the record as a whole. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ. *Id.* However, the court does not review the evidence *de novo*, make credibility determinations, or weigh the evidence. *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial

evidence in the record. *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009). Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. *Brainard*, 889 F.2d at 681. A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion. *Ealy*, 594 F.3d at 512.

### B. Plaintiff's Assignments of Error[2]

#### 1. Sentence Six Remand

Plaintiff's fourth assignment of error contends that "new and material evidence supports reversal or remand." (R. 11, PageID# 1977). Plaintiff relies upon aforementioned treatment records from Drs. Zaky and Shen—prepared after the ALJ's decision—as new and material evidence that warrant remand under Sentence Six of 42 U.S.C. § 405(g). (R. 11, PageID# 1978). These records, however, do not warrant remand.

The party seeking remand bears the burden of showing that a remand is proper under Section 405. *Sizemore v. Sec'y of HHS*, 865 F.2d 709, 711 (6th Cir. 1988); *Oliver v. Secretary, HHS*, 804 F.2d 964, 966 (6th Cir. 1986). Section 405 provides:

> The court ... may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding.

42 U.S.C. § 405(g). In this context, the party seeking remand must show: (1) the additional evidence is new and material, and (2) that she had good cause for her failure to incorporate it into the record during the administrative proceeding. *Oliver*, 804 F.2d at 966. Evidence is "new" only

---

[2] The Court takes Plaintiff's assignments of error out of order to facilitate review.

if it was "'not in existence or available to the claimant at the time of the administrative proceeding.'" *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001) (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)). "Evidence is material when it concerns the claimant's condition prior to the ALJ's decision and there is a reasonable probability that the ALJ would have reached a different decision if the evidence had been presented." *Langford v. Astrue*, No. 1:09CV1629, 2010 WL 3069571, at *5 (N.D. Ohio Aug. 3, 2010) (citing cases); *see also Foster*, 279 F.3d at 357 (quoting *Sizemore*, 865 F.2d at 711); *Hamilton v. Astrue*, No. 1:09CV260, 2010 WL 1032646, at *5 (N.D. Ohio Mar. 17, 2010) (citing *Oliver*, 804 F.2d at 966).

Plaintiff presented the evidence in question to the Appeals Council (AC), after the ALJ's decision. The January 24, 2020 Notice of Appeals Council Action stated:

> You submitted medical records from Cleveland Clinic dated July 2, 2019, through July 9, 2019 (23 pages).[3] The Administrative Law Judge decided your case through May 17, 2019. This additional evidence does not relate to the period at issue. Therefore, it does not affect the decision about whether you were disabled beginning on or before May 17, 2019.
>
> If you want us to consider whether you were disabled after May 17, 2019, you need to apply again. If you file a new claim for disability insurance benefits within 6 months after you receive this letter, we can use May 23, 2019, the date of your request for review, as the date of your new claim. The date you file a new claim can make a difference in the amount of benefits we can pay.

(Tr. 2).

In other words, the AC concluded that the subsequent treatment records were not material to determining whether Plaintiff was disabled on or before May 17, 2019. Plaintiff contends that "both the records from Dr. Zaky and Dr. Shen are highly material and relate back to the relevant

---

[3] Although the AC does not specifically mention Dr. Zaky's treatment notes from November through December of 2019, the same reasoning the AC applied to Dr. Shen's subsequent treatment records applies to Dr. Zaky's subsequent treatment records.

time period." (R. 11, PageID# 1979). Plaintiff continues, "[t]hese records reflect that Ms. Pelton continued to have extensive pain following her lumbar and knee injections, as well as radio frequency ablations, refuting the ALJ's assessment that these injections resulted in permanent relief. (Tr. 11-21, 31-41, 66)." *Id.*

Plaintiff's argument is not persuasive, and remand is not appropriate. "Evidence is not material if it is cumulative of evidence already in the record, or if it merely shows a worsening condition after the administrative hearing." *Kinsley v. Berryhill*, No. 5:17CV00604, 2018 U.S. Dist. LEXIS 45611, at *47 (N.D. Ohio Jan. 24, 2018) (internal citations and quotations omitted). The Sixth Circuit has stated,

> Evidence which reflected the applicant's aggravated or deteriorated condition is not relevant because such evidence does not demonstrate the point in time that the disability itself began. Reviewing courts have declined to remand disability claims for reevaluation in light of medical evidence of a deteriorated condition. If in fact the claimant's condition had seriously degenerated, the appropriate remedy would have been to initiate a new claim for benefits as of the date that the condition aggravated to the point of constituting a disabling impairment.

*Sizemore v. Sec'y of Health & Human Servs.,* 865 F.2d 709, 712 (6th Cir. 1988).

Plaintiff has not established that the records in question are material to her condition before the ALJ's decision. Rather, they at most are evidence of a worsening condition following the administrative decision. Accordingly, remand to consider these records is not warranted.

### 2.     The ALJ's Discussion of Dr. Kaple's Opinions.

In her second assignment of error, Plaintiff asserts that the ALJ did not give good reasons for rejecting the opinions from her treating physician, Dr. Kaple. (R. 11, PageID# 1970). The Commissioner argues that the evidence supports the ALJ's assessment of the doctor's opinion. (R. 13, PageID# 2007).

For claims filed before March 27, 2017, the "treating source rule" applied, which generally required the ALJ to provide controlling weight to the well-supported opinions from treating physicians. However, the Social Security Administration (SSA) has amended the regulations for evaluating medical opinions in connection with claims filed after March 27, 2017, as in the instant case. *See Revisions to Rules Regarding the Evaluation of Medical Evidence*, 82 Fed. Reg. 5844 (Jan. 18, 2017). Notably, the SSA "will not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative medical finding(s)." 20 C.F.R. § 404.1520c(a). An ALJ's decision must "articulate how he considered the medical opinions and prior administrative medical findings" in adjudicating the claim. 20 C.F.R. § 404.1520c(a).

Medical source opinions are evaluated using the factors listed in 20 C.F.R. § 404.1520c(c). The factors include: supportability; consistency; the source's relationship with the claimant; the source's specialized area of practice, if any; and "other factors that tend to support or contradict a medical opinion." 20 C.F.R. §§ 404.1520c(c). The ALJ is required to explain how the decision considered the supportability and consistency of a source's medical opinion(s), but generally is not required to discuss the other factors. 20 C.F.R. § 404.1520c(b)(2) ("The factors of supportability [ ] and consistency [ ] are the most important factors we consider when we determine how persuasive we find a medical source's medical opinions ....").

When considering an opinions supportability, "[t]he more relevant the objective medical evidence and supporting explanations presented by a medical source are to support his or her medical opinion(s) or prior administrative medical finding(s), the more persuasive the medical opinions or prior administrative medical finding(s) will be." 20 C.F.R. § 404.1520c(c)(1). Regarding consistency, the regulations state "[t]he more consistent a medical opinion(s) or prior

administrative medical finding(s) is with the evidence from other medical sources and nonmedical

sources in the claim, the more persuasive the medical opinion(s) or prior administrative medical

finding(s) will be." 20 C.F.R. § 404.1520c(c)(2).

In this case, the ALJ addressed Dr. Kaple's medical source statement as follows:

> Turning to the opinion evidence, the undersigned notes that Stott A Kopke,[4] D.O., submitted a number of medical source statement[s] to the Social Security Administration on behalf of the claimant. In his medical source statements, Dr. [Kaple] indicated that the claimant could only lift and carry 1-2 pounds occasionally due to arthritis and gout, never stand or walk, sit for only one hour, and never climb, balance, stoop, kneel, crouch, or crawl. Additionally, Dr. [Kaple] stated that the claimant could only occasionally reach, rarely push, pull, or engage in fine or gross manipulation. Continuing, Dr. [Kaple] stated that the claimant should avoid heights, moving machinery, temperature extremes, pulmonary irritants, and noise. Dr. [Kaple] also stated that the claimant suffers from moderate to severe symptoms of pain that interferes with concentration and causes absences and time off task. Moreover, Dr. [Kaple] stated that the claimant would require 4-5 additional breaks throughout a normal 8-hour workday. (Ex. 11F, 14F, 19F, 24F, and 26F). With respect for the claimant's mental functions, Dr. [Kaple] stated that the claimant would have moderate to extreme limitations in understanding, remembering, applying information, interacting with others, and adaptive functions, as well as marked to extreme limitations in concentration, persistence, and pace. (Ex. 12F, 13F, and 20F).

> The undersigned finds the opinions offered by Dr. [Kaple] to be unpersuasive. In making this finding, the undersigned notes that the claimant does not even allege mental impairments, which Dr. [Kaple] describes as causing moderate to extreme limitations in functioning. The medical record is also devoid of any reported significant mental issues or limitations from either a mental health component or pain complaints. Furthermore, the undersigned notes that Dr. [Kaple] describes the claimant as being able to lift and carry only 1-2 pounds and essentially being unable to ever walk or stand, despite his own treatment notes indicating that she is ambulatory and able to care for herself

---

[4] The ALJ's reference to Dr. Kopke is a typographic error that is also found in the administrative record index. While discussing these records, it is apparent the ALJ cited to and considered the records from Dr. Scott Kaple. (Tr. 64-65). Further, the parties both cite to the ALJ's discussion of "Stott A. Kopke" as the analysis of Dr. Scott Kaple, thereby acknowledging the typographical error. (R. 11, PageID# 1973, R. 13, PageID# 2009).

independently. Dr. [Kaple] also describes the claimant as being unable to sit for more than 10 minutes, while ignoring the fact that she has been receiving ongoing treatment at the Cleveland Clinic while living in New London, Ohio - a two-hour drive away.

Moreover, the undersigned notes that the exaggerated opinions of Dr. [Kaple] are grossly inconsistent with the medical records from the Fisher Titus Medical Center and Norwalk Primary Care, which show that the claimant is ambulatory, able to use her bilateral upper extremities without significant limitations in function, and is able to sit for extended periods without complaints of debilitating pain. Therefore, based upon the foregoing, the undersigned finds the opinions offered by Dr. [Kaple] to be unpersuasive.

(Tr. 64-65).

The ALJ noted that although Dr. Kaple opined Plaintiff was moderately to extremely limited in her mental functions, this opinion was not supported by Plaintiff's own claim—as she raised no mental impairments. (Tr. 64, 131). The ALJ further noted Plaintiff's medical record is "devoid of any reported significant mental issues of limitations from" mental health issues. (Tr. 64). Simply put, the ALJ noted that there is *nothing* in the record to support the doctor's mental functioning limitations, let alone any *consistent* evidence from which to draw support for the opinion. Plaintiff does not provide any citations to negate this conclusion and does not identify any medical records to support Dr. Kaple's conclusion that she was moderately to extremely limited in her mental functioning. (R. 11, PageID# 1974).

Plaintiff's argument centers on the ALJ's rejection of Dr. Kaple's opinion of her physical limitations. *Id.* The ALJ determined that the doctor's assessment of Plaintiff's physical limitations was not supported by the record. Specifically, the ALJ noted that the doctor "described the claimant as being able to lift and carry only 1-2 pounds and essentially being unable to ever walk or stand, despite his own treatment notes indicating that she is ambulatory and able to care for herself independently." (Tr. 64). Thus, the ALJ found that Dr. Kaple's conclusion is not supported

19

by his own treatment notes. The ALJ further noted that the doctor's contention that Plaintiff was unable to sit for more than 10 minutes was belied by the fact that she had been receiving "ongoing treatment" "a two-hour drive away" from her home. (Tr. 65).

In addition, the ALJ properly considered the doctor's opinions consistency with the record, by explaining "the exaggerated opinions of Dr. [Kaple] are grossly inconsistent with the medical records from the Fisher Titus Medical Center and Norwalk Primary Care, which show that the claimant is ambulatory, able to use her bilateral upper extremities without significant limitations in function, and is able to sit for extended periods without complaints of debilitating pain." (Tr. 65). Before rendering these conclusions, the ALJ's decision provided an extensive detailed discussion of Plaintiff's medical records. In particular, the ALJ provided as follows:

> Then, in August 2017, the record reflects that the claimant was re-evaluated at the Fisher-Titus Medical Center as part of her continuum of care. (Ex. 3F, p. 1). During the subsequent clinical interview, she reported symptoms of moderate to severe pain in her bilateral knees, with the left appearing to be worse than the right. (*Id.,* p. 1). Additionally, the claimant was noted to have a history of obesity. Upon physical examination, she was described as having evidence of bilateral lumbar paraspinal tenderness, as well as tenderness over the joint line of the bilateral knees.

> Furthermore, she was noted to have diminished reflexes in the bilateral lower extremities. (*Id.,* p. 2). However, the physical examination also showed that she remained ambulatory, maintained symmetric reflexes in the lower extremities despite some limitations, and maintained 5/5 motor strength despite her complaints of chronic pains in her knees. (*Id.,* p. 2). Following the assessment, she was diagnosed with bilateral knee osteoarthritis and was recommended for an evaluation by orthopedic surgery. She was also continued on previously started medications for her complaints of chronic pain and swelling in the knees, recommended to lose weight to reduce the effects of obesity on her knee pains, and was referred for additional epidural steroid injections in the knees. (*Id.,* p. 2).

> A review of the subsequent treatment notes show that the claimant received additional cortisone injections in the bilateral knees at the Fisher-Titus Medical Center in October 2017. (Ex. 2F, p. 60). Additionally, the treatment notes show that the claimant received some counseling about her weight, as well as

medications for her obesity. (Ex. l0F, p. 75). Although the treatment notes show that she continued to report symptoms of chronic pain in the bilateral knees, the treatment notes also show that she continued to have 5/5 motor strength in the bilateral legs despite her complaints of pain in the knees. (Ex. 2F, p., p. 6). Furthermore, the treatment notes show that she reported some benefit from the bilateral knee joint injections, which she continued as part of her regular therapy. (*Id.,* p. 61).

Then, in December 2017, the record reflects that the claimant was evaluated at the Cleveland Clinic as part of her continuum of care for her arthritic symptoms. (Ex. 4F, p. 5). During the subsequent clinical interview, she was noted to have complaints of joint stiffness in her lower back and bilateral knees. Additionally, she was noted to have some generalized complaints of discomfort, but reported that she was happy with her rheumatological care. (*Id.,* p. 5). She was then given a comprehensive physical examination, which revealed some radiating symptoms of pain in the lower back into the bilateral lower extremities. Furthermore, the physical examination showed that she had some mild tenderness over the knees, as well as some complaints of pains in the bilateral hands. (*Id.,* p. 6). However, the physical examination showed that she maintained a full range of motion in the neck and upper extremities, and maintained 5/5 motor strength despite her complaints of pain in the lower back and knees. (*Id.* p. 7). Moreover, the physical examination showed that she maintained a normal gait without the use of an ambulatory aid and had no evidence of muscle atrophy. (*Id.,* p. 7). She was then assessed with multisite osteoarthritis and rheumatoid arthritis, lumbago with right sciatica, and with a history of degenerative joint disease in the knees and hips. (*Id.,* p. 7). For treatment, she was recommended to diet and exercise, continued on medications for pain and inflammation, and was recommended to follow up at the Fisher-Titus Medical Center for complaints of pain in her lower back. (*Id.,* p. 8-9).

With respect for the claimant's lower back impairments, progress reports from the Fisher-Titus Medical Center show that the claimant continued to report symptoms of lower back pains that radiated into the bilateral lower extremities. (Ex. 3F). Then, in March 2018, the claimant was re-evaluated at the Cleveland Clinic due to increased complaints of lower back pains. (Ex. 5F, p. 35). Following a comprehensive clinical interview and physical examination, she was noted to have increased pain with standing and walking, as well as positive signs of joint pain or swelling, back pain, or muscle pains. (*Id.,* p. 36). Furthermore, the physical examination showed that she ambulated with an antalgic gait, although she did not require the use of an assistive device. (*Id.,* p. 37). Moreover, the physical examination showed that she had evidence of tenderness to palpation over the paraspinous muscles, with some evidence of bilateral sacroiliac joint tenderness. (*Id.*). She was then diagnosed with lumbar

spondylosis and with sacroiliac joint inflammation, and was recommended for epidural steroid injections in the lower back, weight loss, and physical therapy services. (*Id.*, p. 38). Her subsequent treatment notes show that she received the epidural steroid injections and medial branch blocks in the lumbar spine at L4-5 and L5-S1 on March 14, 2018. (Ex. 6F, p. 36).

Although progress reports from the Cleveland Clinic show that the claimant continued to report signs and symptoms of lower back and bilateral knee pains secondary to osteoarthritis, medical records from the Fisher-Titus Medical Center show that when she was examined on March 20, 2018, she presented with a normal range of motion in the lower back and normal appearing joints despite her history of osteoarthritis in the knees. (Ex. 5F, p. 3). Furthermore, the progress reports show that she continued to report some benefit from her pain medications, which were re-adjusted for therapeutic effect. (*Id.*, p. 4-5). The undersigned also notes that the claimant was referred for physical therapy services; however, progress reports from May 2018 show that she only attended one session. (Ex. 15F, p. 99). Moreover, the progress reports from May 2018 show that she reported during the clinical interview that the epidural steroid injections in the lumbar spine provided 90% relief (*Id.*, p. 99). Although the progress reports show that her lower back impairments were improving with medication management, the records also show that she reported some increase[] in pains in the knees, for which she started using a cane. (*Id.*, p. 99). She was then referred for additional steroid injections in the knees, which she received on May 9, 2018. (*Id.*, p. 129-130). A review of records following the epidural steroid injections in the knees show that the claimant reported an 80% reduction in pain, which lasted briefly. (Ex. 17F, p. 2).

Then, in July 2018, the record reflects that the claimant was re-evaluated at the Cleveland Clinic due to ongoing complaints of bilateral joint stiffness and chronic pain in the knees. (Ex. 25F). Following an examination, she was referred for superolateral and inferiolateal genicular nerve radiofrequency ablation under fluoroscopic guidance. (*Id.*, p. 49-50, and 53). The claimant was also referred for genicular nerve blocks, which she received in August 2018. (*Id.*, p. 51). Following the treatments, she was referred for a physical therapy evaluation and on October 4, 2018, she was noted to have some residual decreases in trunk mobility, decreased general core strength, and deconditioning in the lower back and right lower extremity. (Ex. 21F, p. 1). She was then recommended for outpatient physical therapy, which continued through November 2018. (Ex. 21F and 22F). The records from physical therapy services show that the claimant continued to demonstrate some difficulties with positional changes; however, the treatment notes also show that she continued to progress towards her therapy goals. The claimant even reported in November 2018 that she was doing housework, such as cleaning her floors. (Ex. 22F, p.

8). The undersigned notes that the claimant did report some increases in hand pains in November 2018; however, diagnostic x-rays showed that she had only mild evidence of degenerative changes in the metacarpal joints secondary to a history of osteoarthritis. (Ex. 25F, p. 41). Further, at this time, the records reflected that she had a normal gait without the use of an assistive device and had a normal heel and toe walk (Ex. 25F, pg. 18-21). Moreover, a review of the claimant's progress reports through January 2019 show that she has received little more than routine medication management of her chronic symptoms on an outpatient basis. (Ex. 26F and 27F). The claimant's medical records from January 2019 also show that the claimant has remained ambulatory, albeit with the use of a cane for support. (Ex. 26F, p. 7).

(Tr. 61-63).

The court finds that the ALJ's decision provided a thorough discussion of Plaintiff's medical evidence and analyzed Dr. Kaple's opinion under the pertinent regulatory factors of supportability and consistency. Having considered the parties' arguments and governing law, the court finds no error in the ALJ's consideration of the doctor's opinions and the stated reasons for discounting them. 20 C.F.R. § 404.1520c(a), (b), (c). For these reasons, the court recommends that this assignment of error be rejected.

### 3.     The ALJ's Assessment of Plaintiff's Complaints.

Plaintiff's third assignment of error contends that the ALJ erred when assessing her credibility. (R. 11, PageID# 1975). The court recommends rejecting this claimed error, for the following reasons.

"In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007) (citing 20 C.F.R. § 416.929; *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 686 (6th Cir. 1992) (noting that "this court has previously held that subjective complaints of pain may support a claim for disability")). When making a disability

23

determination, the ALJ considers all the claimant's "symptoms, including pain, and the extent to which [the] symptoms can reasonably be accepted as consistent with the objective medical evidence and other evidence." 20 C.F.R. §404.1529(a). The ALJ "will consider all of [the claimant's] statements about [the claimant's] symptoms, such as pain, and any description [the claimant's] medical sources or nonmedical sources may provide about how the symptoms affect [the claimant's] activities of daily living and [the claimant's] ability to work." *Id*.

However, a claimant's statements regarding "pain or other symptoms will not alone establish that [she is] disabled...." *Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 531 (6th Cir. 1997) (quoting 20 C.F.R. § 404.1529(a)). An ALJ conducts a two-part analysis to evaluate a claimant's subjective statements of pain when the symptoms rather than that underlying condition form the basis of the disability claim. *Rogers*, 486 F.3d at 247; *see also* SSR 16-3P, 2016 SSR LEXIS 4 at *5, 2017 WL 5180304, at *3-*4. First, the ALJ must determine whether there is "an underlying medically determinable physical impairment [MDI] that could reasonably be expected to produce the claimant's symptoms." *Id*. (citing 20 C.F.R. § 416.929(a)).

If the first test is satisfied, the ALJ must then evaluate "the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities." *Rogers*, 486 F.3d at 247. Whenever a claimant's complaints regarding symptoms, or their intensity and persistence, are not supported by objective medical evidence, the ALJ must assess the credibility of the claimant's alleged symptoms "based on a consideration of the entire case record." *Id*.

Social Security Regulation 16-3P[5] lists the factors relevant to the ALJ's determination at

---

[5] Plaintiff cites to Social Security Ruling 96-7p in support; however, on March 28, 2016 the SSA issued Social Security Ruling 16-3p which replaced SSR 96-7. SSR 16-3p, 2016 SSR LEXIS 4. Notably, SSR 16-3 eliminates the use of the term "credibility", clarifying "that subjective symptom evaluation is not an examination of an individual's character."

the second step. These factors include: the individual's daily activities; the location, duration, frequency and intensity of the individual's pain or other symptoms; any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual has received for relief of pain or other symptoms; any measures other than treatment the individual uses or has used to relieve pain; and, "[a]ny other factors concerning an individual's functional limitations and restrictions due to pain or other symptoms." SSR 16-3P, 2016 SSR LEXIS 4 at *19, 2017 WL 5180304, at *7-*8; *see, e.g.*, *Morrison v. Commissioner*, No. 16-1360, 2017 U.S. App. LEXIS 19463, 2017 WL 4278378, at *4 (6th Cir. Jan. 30, 2017).

While an ALJ is not required to explicitly address all these factors, the ALJ should sufficiently articulate specific reasons for the credibility determinations so that the claimant and any subsequent reviewer can "trace the path of the ALJ's reasoning." *Cross v. Comm'r of Soc. Sec.*, 373 F. Supp. 2d 724, 733 (N.D. Ohio 2005). Here, the ALJ's decision satisfied that standard.

The ALJ summarized the claimant's allegations as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause some of the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision. In making this finding, undersigned has considered the totality of the record to determine the intensity, persistence, and limiting effects of the claimant's impairments. This includes an evaluation of the claimant's activities of daily living; the location, duration, frequency, and intensity of pain or other symptoms; factors that precipitate or aggravate symptoms; the type, dosage, effectiveness, and side effects of any medications; treatment, other than medication, that the claimant has received for symptoms; and any other measures that the claimant has used to relieve pain or other symptoms. The undersigned has also considered any other factors concerning the claimant's functional limitations due to pain or other symptoms pursuant to 20 CFR 404.1529(c)(3) and 416.929(c)(3). Specifically, the undersigned notes that despite the claimant's history of

rheumatoid arthritis and degenerative joint disease, she has not required surgical intervention on her knees. Furthermore, the treatment notes show that the claimant reported as much as a 90% reduction in lower back pains after receiving epidural steroid injections in the lower back, and an 80% reduction in pain after receiving steroid injections and radiofrequency ablation in the bilateral knees. Moreover, the treatment notes show that the claimant's progress in physical therapy has been limited by her attendance. Additionally, the treatment notes show that the claimant has remained ambulatory with the use of a cane, and diagnostic x-rays of the hands show only mild evidence of degenerative joint disease. Therefore, based on the foregoing, the undersigned finds that the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence of record, and that the above listed residual functional capacity assessment is supported by the objective medical evidence, the opinion evidence, and the statements of the claimant.

(Tr. 65-66).

With regard to step two, Plaintiff does not argue that the ALJ failed to consider any of the factors set forth in SSR 16-3p, or that the ALJ failed to explain the credibility determinations. Rather, Plaintiff disagrees with the ALJ's conclusions and credibility determinations.

The ALJ's findings based on the credibility of the claimant are accorded great weight and deference. *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007); *Walters*, 127 F.3d at 531; *Gonzalez v. Commissioner*, No. 1:06CV687, 2008 U.S. Dist. LEXIS 121965, 2008 WL 584927, at *5 (W.D. Mich. Jan. 17, 2008). Although the ALJ's credibility determinations must be "based on a consideration of the entire case record[,]" *Rogers*, 486 F.3d at 247-248, the ALJ's decision need not explicitly discuss each of the regulatory factors. *See Renstrom v. Astrue*, 680 F.3d 1057, 1067 (8th Cir. 2012). "While the ALJ must discuss significant evidence supporting his decision and explain his conclusions with sufficient detail to permit meaningful review, there is no requirement that the ALJ incorporate all the information upon which he relied into a single tidy paragraph." *Newsome v. Comm'r of Soc. Sec.,* No. 1:18-cv-2707, 2019 U.S. Dist. LEXIS 223785,

at *29 (N.D. Ohio Dec. 5, 2019).

Here, the ALJ concluded that claimant's statements concerning the effects of her symptoms were not entirely consistent with the medical evidence and other evidence in the record "for the reasons explained in this decision." (Tr. 65). The ALJ's decision considered pertinent factors in SSR 16-3P, including Plaintiff's daily activities, intensity of her symptoms, prescribed medications and treatments other than medications. *Id.* at 65-66; *see also* SSR 16-3P, 2016 SSR LEXIS 4 at *19, 2017 WL 5180304, at *7-*8. For example, the ALJ recognized Plaintiff's history of rheumatoid arthritis and degenerative joint disease, but noted that she has not yet required surgical intervention on her knees. (Tr. 66). Plaintiff characterizes the ALJ as faulting her non-compliance with treatment options to undergo knee-replacement surgery, and asserts the ALJ erred by not recognizing her justifiable reasons for not doing so since she was advised to lose weight and lacked health insurance. (R. 11, PageID# 1975-76). However, as the Commission notes, the ALJ did not fault Plaintiff for non-compliance with treatment options. (R. 13, PageID# 2013). Rather, the ALJ recognized Plaintiff's testimony "that she will require knee replacement surgery in the near future[.]" (Tr. 60, citing Plaintiff's hearing testimony). Thus, the ALJ's statement that Plaintiff "has not required surgical intervention on her knees" is supported by the record and her own testimony. (Tr. 66).

The ALJ further noted that Plaintiff reported substantial reduction in lower back and knee pain after receiving steroid injections and radiofrequency ablations in her knees. (Tr. 66). Plaintiff concedes those findings, but faults the ALJ for failing to "account for the eventual return of Ms. Pelton's knee and low back pain." (R. 11, PageID# 1976). A review of the ALJ's decision, however, does not support Plaintiff's contention. The ALJ specifically referenced medical records recognizing that even after cortisone injections "she continued to report symptoms of chronic pain

in the bilateral knees, the treatment notes also show that she continued to have 5/5 motor strength in the bilateral legs despite complaints of pain in the knees." (Tr. 62). Similarly, the ALJ recognized that Plaintiff received epidural steroid injections and medial branch blocks in her spine on March 14, 2018, and on March 20, 2018, "presented with a normal range of motion in her lower back and normal appearing joints." (Tr. 63). Moreover, the ALJ relied upon Plaintiff's treatment records from May 2018, which "show that she reported during the clinical interview that the epidural steroid injections in the lumbar spine provided 90% relief," and noted that "[a] review of records following the epidural steroid injections in the knees show that the claimant reported an 80% reduction in pain, which lasted briefly." (Tr. 63). Accordingly, the ALJ recognized that the various procedures provided relief, as evidenced by Plaintiff's medical records and her own testimony. The ALJ did not, however, "fail to account for the eventual return" of Plaintiff's symptoms. (R. 11, PageID# 1976). The ALJ concluded that Plaintiff was limited to sedentary work with various limitations set forth in the residual functional capacity. (Tr. 59-60).

Plaintiff also challenges the ALJ's statement that her physical therapy progress was limited by attendance (Tr. 66), and asserts there are no cancellations or failures to appear noted in the medical record. (R. 11, PageID# 1977). As the ALJ explained, "[t]he undersigned also notes that the claimant was referred for physical therapy services; however, progress reports from May 2018 show that she only attended one session." (Tr. 63). The ALJ further acknowledged that Plaintiff underwent a physical therapy evaluation on October 4, 2018, wherein "she was then recommended for outpatient physical therapy, which continued through November 2018." (Tr. 63). Thus, the ALJ's statement was not inaccurate.

Next, Plaintiff contends that "the facts that Ms. Pelton has remained ambulatory with a cane, and x-ray testing has revealed only mild degenerative joint disease, neither provide good

reason to give less weight to Ms. Pelton's allegations of pain." (R. 11, PageID# 1977). Notably, Plaintiff concedes both of these facts. Moreover, by listing these facts, the ALJ did not "give less weight to Ms. Pelton's allegations of pain." Rather, Plaintiff testified that she could walk 15 to 20 feet without a cane. (Tr. 94). The ALJ recognized this testimony by limiting her to sedentary work where "[t]he claimant must be able to use an assistive device/cane if she has to ambulate more than 15 to 20 feet from the workstation." (Tr. 59).

Plaintiff's argument also relies upon subsequent medical records from Drs. Zaky and Shen to establish the worsening of her symptoms. However, as explained above, these records were not before the ALJ, having only been submitted to the Appeals Council upon appeal. Evidence supplied to the AC after the hearing may not be considered for purposes of determining whether substantial evidence supports the ALJ's decision, because the court's review is confined to evidence that was available to the ALJ. *Cotton v. Sullivan*, 2 F.3d 692, 696 (6th Cir. 1993).

Reading the decision as a whole, it is clear that the ALJ considered the SSR 16-3P factors in assessing the credibility of Plaintiff's statements concerning the effects of her symptoms. The ALJ's credibility determinations are reasonable, specific, and supported by substantial evidence. In particular, "[b]ecause 'a reasonable mind might accept [the evidence] as adequate to support' his credibility determination, the court concludes that substantial evidence supports the ALJ's finding." *Norris v. Commissioner*, 461 Fed. App'x. 433, 2012 WL 372986, at *5 (6th Cir. 2012) (citing *Rogers*, 486 F.3d at 241). For the above reasons, the court recommends that the third assignment of error be rejected.

### 4.      The ALJ's RFC Assessment

Plaintiff's first assignment of error contends that the ALJ erred by not incorporating a need

to elevate her legs into the RFC assessment. (R. 11, PageID# 1968-69). Plaintiff argues that the RFC failed to account for Dr. Kaple's opinion that she "needs the ability to elevate her legs at will from 90-120 degrees (Tr. 1729, 1827), diagnostic evidence showing that she has severe osteoarthritis of the bilateral knees (Tr. 872-873), and the fact that she has been prescribed a cane to ambulate (Tr. 1887-1891)." (R. 11, PageID# 1968).

The RFC is an indication of an individual's work-related abilities *despite* their limitations. *See* 20 C.F.R. § 404.1545(a).[6] The ALJ bears the responsibility for assessing a claimant's RFC, based on the relevant evidence. *See* 20 C.F.R. § 404.1546(c). The ALJ's hypothetical questioning to a vocational expert during an administrative hearing must precisely and comprehensively set forth every physical and mental impairment that the ALJ accepts as true and significant. *See Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987). Where the hypothetical question is supported by evidence in the record, it need not reflect unsubstantiated allegations by the claimant. *See Blacha v. Sec'y of Health & Human Servs.*, 927 F.2d 228, 231 (6th Cir. 1990).

In addition, testimony from a vocational expert—in response to a hypothetical question may constitute substantial evidence that a claimant retains the ability to perform specific jobs, so long as the hypothetical question accurately accounts for a claimant's physical and mental impairments. *See, e.g., Pasco v. Comm'r of Soc. Sec.*, 137 Fed. App'x 828, 845 (6th Cir. 2005) (*citing Varley*, 820 F.2d at 779)). However, "[t]he rule that a hypothetical question must

---

[6] Moreover, a claimant's RFC is not a medical opinion, but an administrative determination reserved to the Commissioner, and "[i]f the treating physician instead submits an opinion on an issue reserved to the Commissioner—such as whether the claimant is disabled, unable to work, *the claimant's RFC*, or the application of vocational factors—his decision need only 'explain the consideration given to the treating source's opinion." *Curler v. Comm'r of Soc. Sec.*, 561 Fed. App'x 464, 471 (6th Cir. 2014) (emphasis added) (*quoting Johnson v. Comm'r of Soc. Sec.*, 535 Fed. App'x. 498, 505 (6th Cir. 2013) (internal citations omitted)).

incorporate all of the claimant's physical and mental limitations does not divest the ALJ of his or her obligation to assess credibility and determine the facts." *Griffeth v. Comm'r of Soc. Sec.*, 217 Fed. App'x 425, 429 (6th Cir. 2007) (*quoting Redfield v. Comm'r of Soc. Sec.*, 366 F. Supp.2d 489, 497 (E.D. Mich. 2005)). In other words, when an ALJ presents hypothetical question(s) to the VE, the ALJ is required to incorporate only those limitations that have been accepted as credible. *Griffeth*, 217 Fed. App'x at 429 (*citing Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993)); *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 118-19 (6th Cir. 1994)); *Elliott v. Comm'r of Soc. Sec.*, No. 1:09cv2260, 2011 WL 400101 (N.D. Ohio, Jan. 11, 2011) (Armstrong, M.J.) (*citing Gant v. Comm'r of Soc. Sec.*, 372 Fed. App'x 582 (6th Cir. 2010)) (same), *adopted by* 2011 WL 441518 (Feb. 4, 2011) (Gaughan, J).

Although Plaintiff contends the ALJ should have incorporated Dr. Kaple's opinion relating to leg elevation (R. 11, PageID# 1968-69), the ALJ, as explained above, properly considered the necessary factors when determining that the doctor's opinion was unpersuasive. In addition, Plaintiff does not challenge the Commissioner's assertion that the "record did not support Plaintiff's claim that she needed to elevate her legs during the workday (R. 13, PageID# 2005); "[n]one of Plaintiff's physicians ever recommended that she elevate her legs" (*id.* at 2006); and the only evidence offered is from Dr. Kaple's medical source statements, which the ALJ considered and found unpersuasive. *Id.*

Plaintiff argument disagrees with the ALJ's assessment of the doctor's opinion and invites the court to reweigh the evidence in her favor. This court, however, "does not reconsider facts, re-weigh the evidence, resolve conflicts in evidence, decide questions of credibility, or substitute its judgment for that of the ALJ." *Reynolds v. Comm'r of Soc. Sec.*, 424 Fed. App'x. 411, 2011 WL 1228165 at * 2 (6th Cir. 2011) (*citing Youghiogheny & Ohio Coal Co. v. Webb*, 49 F.3d 244, 246

(6th Cir. 1995)). The Sixth Circuit has explained, "it squarely is not the duty of the district court, nor this court, to re-weigh the evidence, resolve material conflicts in testimony, or assess credibility." *Vance v. Comm'r of Soc. Sec.*, 260 Fed. App'x. 801, 2008 WL 162942 at * 6 (6th Cir. 2008).

Here, the ALJ also found the opinions of state agency physicians Dr. Sutherland and Dr. McKee to be somewhat persuasive. (Tr. 65). The ALJ's RFC is consistent with Dr. Sutherland and Dr. McKee's opinions, while providing greater limitations for standing and walking. *Id*. State agency consultative opinions may constitute substantial evidence supporting an ALJ's decision. *See, e.g., Lemke v. Comm'r of Soc. Sec.*, 380 Fed. App'x. 599, 601 (9th Cir. 2010) (finding that the ALJ's decision was supported by substantial evidence where it was consistent with the opinion of the state agency's evaluating psychological consultant, which was consistent with the other medical evidence in the record); *Filus v. Astrue*, 694 F.3d 863 (7th Cir. 2012) (finding that state agency physicians' opinions that a claimant did not meet or medically equal any listed impairment constituted substantial evidence supporting the ALJ's conclusion); *Cantrell v. Astrue*, 2012 WL 6725877, at *7 (E.D. Tenn. Nov. 5, 2012) (finding that the state agency physicians' reports provided substantial evidence to support the ALJ's RFC finding); *Brock v. Astrue*, 2009 WL 1067313, at *6 (E.D. Ky. Apr. 17, 2009) ("[T]he argument that the findings of the two non-examining state agency physicians cannot constitute substantial evidence is inconsistent with the regulatory framework."); *Clark v. Astrue*, 2011 WL 4000872 (N.D. Tex. Sept. 8, 2011) (state agency expert medical opinions "constitute substantial evidence to support the finding that plaintiff can perform a limited range of light work.").

A "plaintiff's mere disagreement with the weight an ALJ ascribes to certain opinions does not provide basis for overturning the RFC determination." *White v. Colvin*, No. 3:13-cv-02106,

2014 U.S. Dist. LEXIS 142152, at *17-18 (N.D. Ohio July 21, 2014). The Sixth Circuit has repeatedly upheld ALJ decisions where medical opinion testimony was rejected, and the ALJ determined the RFC based upon objective medical and non-medical evidence. *See e.g., Ford v. Comm'r of Soc. Sec.*, 114 Fed. App'x. 194, 2004 WL 2567650 (6th Cir. 2004); *Poe v. Comm'r of Soc. Sec.*, 342 Fed. App'x. 149, 2009 WL 2514058 (6th Cir. 2009).

Reading the decision as a whole, it is clear that the ALJ considered the necessary factors in assessing the credibility of Plaintiff's statements concerning the effects of her symptoms. *See* SSR 16-3P, 2016 SSR LEXIS 4 at *5, 2017 WL 5180304, at *3-*4. Although Plaintiff clearly believes more restrictive limitations could have been assessed based on the medical record, the Plaintiff's filings have not shown that the ALJ applied the wrong legal standard; nor do they establish a violation of the substantial evidence standard. For the above reasons, the court recommends that the first assignment of error be rejected.

## VI.      Conclusion

It is recommended that the Commissioner's final decision be AFFIRMED, for the foregoing reasons.

s/ *David A. Ruiz*
David A. Ruiz
United States Magistrate Judge

Date: January 20, 2021

## OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation. 28 U.S.C. § 636(b)(1). Failure to file objections within the specified time may waive the right to appeal the district court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**